[No. S175907. June 10, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,
Defendant and Appellant.

302

**COUNSEL**

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Peter A. Botz, Robert Tomlin White and Toni L. Martinson for Two Jinn, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Ralph L. Rosato, Assistant County Counsel, Brian T. Chu, Principal Deputy County Counsel, and Jason C. Carnevale, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**CORRIGAN, J.**—We granted review to resolve a conflict between the Second and Third District Courts of Appeal. At issue is when a motion for relief from forfeiture of bail must be made if an absconding defendant is arrested or surrendered in a county other than the jurisdiction where the case is pending. We hold that such a motion must be filed within 180 days of forfeiture, unless the time is extended as the governing statute permits.

## I.  BACKGROUND

Robert Laimbeer repeatedly failed to appear in Los Angeles County Superior Court on charges of driving with a suspended license and without proof of insurance. He was apprehended on a bench warrant. On March 17, 2007, bail in the amount of $35,000 was posted on his behalf by The Bail Hotline Bail Bonds, as agent for appellant Indiana Lumbermens Mutual Insurance Company (hereafter Lumbermens). Laimbeer failed to appear for his April 18, 2007 court date. The court issued a bench warrant and ordered the bail forfeited. Notice was mailed to Lumbermens.

On July 16, 2007, Lumbermens's bail agent surrendered Laimbeer to the San Bernardino County Sheriff's Department, which booked him on drug charges and placed a hold on him in the Los Angeles case. In September, Laimbeer was sent to state prison from San Bernardino County. On October 23, 2007, the Los Angeles County Superior Court notified Lumbermens that 180 days had elapsed since bail was forfeited, and that payment was due. The notice stated that prompt payment would avoid the filing of a summary judgment, and the associated costs and interest. Lumbermens did not respond, and summary judgment was entered against it on December 4, 2007.

On January 2, 2008, Lumbermens moved to vacate the summary judgment, set aside the forfeiture, and exonerate the bond. The trial court denied the motion. However, the Court of Appeal reversed, noting that there was a division of authority as to the timing requirements for motions for relief from bail forfeiture when the defendant is arrested in another county. It decided the controlling statute should be applied so as to avoid a forfeiture.

The statutory scheme governing bail is found in Penal Code section 1268 et seq.[1] When a defendant released on bail fails to appear as required without sufficient excuse, the court must declare the bond forfeited. (§ 1305, subd. (a).) If the defendant appears in court or is returned to custody within

---

[1] Further undesignated statutory references are to the Penal Code.

180 days, the forfeiture must be vacated and the bond exonerated. (§ 1305, subd. (c).)[2] Otherwise, the court enters summary judgment against the surety. (§ 1306, subd. (a).)[3]

■ Under section 1305, a court appearance or return to custody in the county where the case was filed is treated differently from a return to custody outside the county. If the defendant appears during the 180-day period, "the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated. If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated." (§ 1305, subd. (c)(1).) The same disposition is required if the defendant is returned to custody within 180 days in the county where the case was filed, but released before making a court appearance. The court must act on its own motion to reinstate and exonerate the bond, and if it fails to do so exoneration is accomplished by operation of law. (§ 1305, subd. (c)(2).)

On the other hand, when the defendant is returned to custody *outside* the county within the 180-day period, the statute provides only that "the court shall vacate the forfeiture and exonerate the bail." (§ 1305, subd. (c)(3); hereafter section 1305(c)(3).)[4] In this circumstance, the court is not directed to act on its own motion, and there is no provision for immediate exoneration if the court does not act.

■ The parties agree that the surety may not rely on operation of law, but must affirmatively seek relief from forfeiture under section 1305(c)(3). Lumbermens acknowledges that the statute does not require the court to take the initiative, because the court may not know that the defendant is in custody

---

[2] The 180-day period is extended by five days when notice of forfeiture is required to be mailed, and in that event the period begins to run from the date of mailing. (§ 1305, subd. (b).) Although the actual period is therefore usually 185 days, section 1305 repeatedly refers to a 180-day period, and we follow that convention.

[3] Section 1305 provides exceptions from the forfeiture requirement, none of which is relevant here. Relief is available within the 180-day period if it is shown that the defendant's nonappearance was the result of a permanent disability. (§ 1305, subd. (d).) The period may be tolled in cases of temporary disability. (§ 1305, subd. (e).) Subdivisions (f) and (g) of section 1305 permit relief from forfeiture "on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release," without reference to the 180-day period, in circumstances where the defendant is apprehended outside the jurisdiction and the prosecuting agency elects not to seek extradition.

Section 1305.4 allows the surety to move for an extension of the 180-day period, upon a showing of good cause.

[4] Section 1305(c)(3) provides in full: "If, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, the court shall vacate the forfeiture and exonerate the bail."

outside the county. Therefore, a motion by the surety is required. The question before us is when the motion must be filed. The People contend the statutory 180-day period is controlling. They rely on section 1305, subdivision (i) (hereafter section 1305(i)), which states: "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period."[5] Lumbermens argues that section 1305(i) is not mandatory, and does not apply to motions for relief from forfeiture under section 1305(c)(3). It asks us to hold that a motion may be filed within a reasonable time after expiration of the 180-day period.

The People's view was adopted in *People v. Lexington National Ins. Co.* (2007) 158 Cal.App.4th 370 [69 Cal.Rptr.3d 738] (*Lexington*). Lumbermens's position finds support in *People v. Ranger Ins. Co.* (2006) 141 Cal.App.4th 867 [46 Cal.Rptr.3d 448] (*Ranger*). The Court of Appeal below followed *Ranger*. We reverse.

## II. DISCUSSION

### A. *The Court of Appeal Decisions*

We begin by reviewing the Court of Appeal decisions. In *Ranger*, Division Six of the Second District noted that "[o]rdinarily, a surety must file a motion to exonerate the bond within 185 days of the mailing of the notice of forfeiture. (§ 1305, subds. (b) & (i).)" (*Ranger, supra*, 141 Cal.App.4th at p. 869.) The court rejected the surety's argument that section 1305(c)(3) requires the court to act on its own motion when the defendant is apprehended in a different county. (*Ranger*, at p. 870.) However, it reasoned that section 1305(c)(3) "does not require that a motion to exonerate the bail be brought within 180 days. . . . What is significant here is that the defendant was in custody within 180 days of the notice of forfeiture. . . . [¶] Bail insures the accused's attendance at court proceedings. The surety is guarantor of defendant's presence. When defendant is in custody for the case in which bail is set, that guarantee is met. That is what happened here. Defendant 'showed up,' albeit not voluntarily. That is 100 percent success for the surety. The county does not gain a windfall." (*Ranger*, at p. 871.)

---

[5] Section 1305(i) provides in full: "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause. The motion may be made by the surety insurer, the bail agent, the surety, or the depositor of money or property, any of whom may appear in person or through an attorney. The court, in its discretion, may require that the moving party provide 10 days prior notice to the applicable prosecuting agency, as a condition precedent to granting the motion."

*Ranger's* reasoning is not entirely clear. If a surety must ordinarily file a motion within the statutory period, the defendant's return to custody is not a readily apparent justification for departing from the usual rule. Indeed, a return to custody is the occasion for a motion seeking relief from forfeiture. In *Lexington, supra,* 158 Cal.App.4th 370, the Third District Court of Appeal concluded that *Ranger's* holding was inconsistent with the statutory scheme. The court agreed with *Ranger* that section 1305(c)(3) itself does not require a motion within 180 days, but observed that the reference to " '[a] motion filed in a timely manner within the 180-day period' " in section 1305(i) "strongly suggests that the Legislature intended that all motions to vacate the forfeiture and exonerate a bond under section 1305 be filed within the statutory period." (*Lexington, supra,* 158 Cal.App.4th at pp. 374–375.)

The *Lexington* court also found support in the provisions of section 1306, subdivision (a): " 'When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture . . . *shall enter a summary judgment* against each bondsman named in the bond in the amount for which the bondsman is bound.' (Italics added.) By requiring that courts enter summary judgment at the expiration of the statutory period, the Legislature clearly contemplated that motions to vacate the forfeiture and exonerate the bond, including those brought under section 1305, subdivision (c)(3), be brought prior to the expiration of the statutory period." (*Lexington, supra,* 158 Cal.App.4th at p. 375.)

In the case before us, the Court of Appeal reasoned as follows: "The disagreement between *Ranger* and *Lexington* demonstrates an ambiguity in the statute with respect to the timing for filing a motion to vacate a forfeiture if the defendant is surrendered to custody or arrested outside the county in which the case is located.

"Our resolution of the issue is facilitated by basic principles governing bail statutes. . . . [T]he law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. (*People v. United Bonding Ins. Co.* [(1971)] 5 Cal.3d [898,] 906 [98 Cal.Rptr. 57, 489 P.2d 1385].) Therefore, section 1305 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. (*County of Los Angeles v. Ranger Ins. Co.* [(1999)] 70 Cal.App.4th [10,] 16 [82 Cal.Rptr.2d 214].) Accordingly, given a choice between *Lexington's* interpretation of section 1305, which would compel a forfeiture herein, and *Ranger's* interpretation of the statute, which would avoid one, our choice is clear.

"Further, in this case, as in *Ranger* and *Lexington*, the defendant was in custody in the underlying case within the [180]-day period, albeit in a different county. (*Ranger, supra*, 141 Cal.App.4th at p. 869; *Lexington, supra*, 158 Cal.App.4th at pp. 372, 375, fn. 6.) The delay merely related to [Lumbermens's] filing of a motion to vacate the forfeiture and exonerate the bond. A forfeiture under these circumstances, in which the purpose of bail has been served, would amount to an improper windfall for the County. (*People v. Wilcox* [(1960)] 53 Cal.2d [651,] 657 [2 Cal.Rptr. 754, 349 P.2d 522]; *Ranger, supra*, 141 Cal.App.4th at p. 871.)"

It is true as a general rule that the bail statutes are strictly construed to avoid forfeiture. (See *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 714 [61 Cal.Rptr.3d 689, 161 P.3d 198].) Furthermore, section 1305 is ambiguous, at least to a degree. Section 1305(c)(3) requires the court to grant relief from forfeiture if the defendant is apprehended outside the county within 180 days. The statute does not require the court to act on its own motion, but neither does it specify that the surety must move for relief. No reference is made to the timing provisions of section 1305(i). Section 1305.4, by contrast, specifies that a motion to obtain an extension of the 180-day period "may be filed and calendared as provided in subdivision (i) of Section 1305." Section 1305(i) itself contemplates a motion filed within 180 days, but its terms are not expressly mandatory. It simply states that "[a] motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period."

While section 1305 is somewhat less than explicit regarding the timing of a motion for relief from forfeiture under subdivision (c)(3), the most natural construction would be to apply the provisions of subdivision (i) contemplating a motion within the 180-day period. Nevertheless, the split between the Courts of Appeal reflects uncertainty over that reading of the statute. We turn to the history of the language now found in section 1305(i) to explore the Legislature's intent with respect to motions for relief under section 1305(c)(3). (See *People v. Allegheny Casualty Co., supra*, 41 Cal.4th at pp. 708–709.) As discussed below, that history as well as the broader statutory context leave no doubt that motions under section 1305(c)(3) were meant to be filed within the 180-day period, unless the period is extended. The policy disfavoring forfeiture cannot overcome the plainly intended meaning of the statute. Contrary to the reasoning of the *Ranger* court and the Court of Appeal below, failure to bring a timely motion results in a statutory bar to relief, not a windfall to the county.

B. *The Legislative History*[6]

The provision contemplating "[a] motion filed in a timely manner within the 180-day period" first appeared in 1993, in a bill repealing and reenacting section 1305, subdivision (c): "(c) If the defendant appears in court within 180 days of the date of forfeiture or within 180 days of the date of mailing of the notice if the notice is required under subdivision (b), the court shall, on its own motion, direct the order of forfeiture to be vacated and the bond exonerated. . . . [¶] Additionally, if the defendant is surrendered to custody or to the court by the bail within the 180-day period, the court shall, on its own motion, direct the order of forfeiture to be vacated and the bond exonerated. . . . [¶] In all other cases, an order vacating the forfeiture shall not be made without 10 days' prior notice by the bail to the applicable prosecuting agency, unless notice is waived by the agency. . . . A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause." (Stats. 1993, ch. 524, § 2, pp. 2702–2703, enacting Assem. Bill No. 734 (1993–1994 Reg. Sess.).)

An Assembly committee analysis notes: "The main substantive portion of this bill is the provision which extends the time during which a surety may appear in court with a motion to vacate the forfeiture. According to the sponsor this change is needed because sureties frequently receive notice toward the end of the applicable 180 day notice period, giving them little time to either find the defendant and cause him or her to appear, or file a motion to vacate the forfeiture. Under this bill, the surety will have a five day grace period at the end of the 180 days, and the court will have until 30 days after that period to hear any motion." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 734 (1993–1994 Reg. Sess.) as amended Apr. 29, 1993, p. 2.) Both the language of the bill and the committee analysis reflect the Legislature's understanding that motions would be filed within the 180-day period.

The next year, the Legislature made additional changes to section 1305. The current subdivisions began to take shape:

"(c)(1) If the defendant appears either voluntarily or in custody after surrender or arrest in court within 180 days of the date of forfeiture or within 180 days of the date of mailing of the notice if the notice is required under

---

[6] On our own motion, we take judicial notice of the legislative history materials discussed in this section.

subdivision (b), the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated. If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated. . . .

"(2) If, within the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, and is subsequently released from custody prior to an appearance in court, the court shall, on its own motion, direct the order of forfeiture to be vacated and the bond exonerated. If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated. . . .

"(3) If, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, the court shall vacate the forfeiture and exonerate the bail.

"(4) Except as provided in paragraphs (1) and (2), the court, in its discretion, may require that the bail provide 10 days' prior notice to the applicable prosecuting agency, as a condition precedent to vacating the forfeiture. . . . A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause." (Stats. 1994, ch. 649, § 1, pp. 3133–3135, enacting Assem. Bill No. 3059 (1993–1994 Reg. Sess.).) Again, it is clear the Legislature meant to require sureties to move for relief within the statutory period in cases where the court was not required to act on its own motion.[7]

---

[7] The only relevant comment in the committee materials for this legislation is at odds with the terms of the amended statute: "In addition to existing law, this bill would further require the court, on its own motion, to vacate the forfeiture and exonerate the bond if *either* the defendant is surrendered or arrested within the county where the case located and is subsequently released from custody prior to an appearance in court, *or if the defendant is surrendered or arrested outside the county where the case is located.* AB 3059 would provide that if the court fails to so act, the bond shall be vacated and exonerated automatically." (Sen. Floor Analysis of Assem. Bill No. 3059 (1993–1994 Reg. Sess.) as amended Aug. 8, 1994, p. 2, italics added.) The italicized comments failed to recognize that in this version of section 1305, subdivision (c)(4) contemplated the filing of a motion and subdivision (c)(3) did not include the provisions for automatic relief found in subdivision (c)(1) and (2).

The same misreading appeared in the Legislative Counsel's Digest. (See Legis. Counsel's Dig., Assem. Bill No. 3059 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 242; *Ranger, supra,* 141 Cal.App.4th at p. 871.) As the *Ranger* court observed, "[o]ften, the Legislative Counsel's Digest is helpful in construing a statute. But when the plain words of the statute are unambiguous, they are the sole source of legislative intent, not the Digest." (*Ranger,* at p. 871.) The *Ranger* and *Lexington* courts agreed that a motion is required for relief to be

The latest relevant amendment occurred in 1999. The Legislature removed the language governing motions and extensions of time from section 1305, subdivision (c)(4), and placed it by itself in section 1305(i). (Stats. 1999, ch. 570, § 2, p. 3953, enacting Assem. Bill No. 476 (1999–2000 Reg. Sess.).) A Senate committee analysis explains the reason for this change:

"The sponsor, in discussions with Committee staff, has indicated that the current statutes and applicable court decisions are overly restrictive as to exoneration of bail.

"A recent decision of the Court of Appeal of California—[*County*] *of Los Angeles* v. *National Automobile & Casualty* [*Ins. Co.*] (1998) 67 Cal.App.4th 267 [79 Cal.Rptr.2d 5]—held that a motion to toll the 180-day period during which forfeited bail may be exonerated must be *heard and granted* before the expiration of the 180-day period or the court loses jurisdiction to act in the bail matter. (Bail is forfeited at the time the defendant fails to appear for a scheduled court appearance and bail may thereafter be reinstated if the defendant returns to court.) While the National case involved a request to toll the 180-day forfeiture exoneration time limit because of a temporary disability of the defendant [under] Penal Code section 1305, subdivision (e), there appears to be no reason that such a ruling would not apply under the more general tolling/extension provision in Penal Code section 1305.4.[8]

"Thus it appears that if the court has not tolled and extended the 180-day period, the court can neither toll the forfeiture period nor vacate forfeiture of the bail. A summary judgment against the surety shall be entered after the 180

---

granted under section 1305(c)(3). (*Ranger*, at p. 871; *Lexington*, *supra*, 158 Cal.App.4th at p. 374.) That conclusion is sound.

[8] Section 1305, subdivision (e) has not changed since the *National* case was decided. It states: "In the case of a temporary disability, the court shall order the tolling of the 180-day period provided in this section during the period of temporary disability, provided that it appears to the satisfaction of the court that the following conditions are met: [¶] (1) The defendant is temporarily disabled by reason of illness, insanity, or detention by military or civil authorities. [¶] (2) Based upon the temporary disability, the defendant is unable to appear in court during the remainder of the 180-day period. [¶] (3) The absence of the defendant is without the connivance of the bail. [¶] The period of the tolling shall be extended for a reasonable period of time, at the discretion of the court, after the cessation of the disability to allow for the return of the defendant to the jurisdiction of the court." (*Ibid.*; see *County of Los Angeles v. National Automobile & Casualty Ins. Co.*, *supra*, 67 Cal.App.4th at p. 277, fn. 3.)

Section 1305.4, as amended by the 1999 legislation that also created section 1305(i), provides: "Notwithstanding Section 1305, the surety insurer, the bail agent, the surety, or the depositor may file a motion, based upon good cause, for an order extending the 180-day period provided in that section. The motion shall include a declaration or affidavit that states the reasons showing good cause to extend that period. The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from its order. A motion may be filed and calendared as provided in subdivision (i) of Section 1305." (Stats. 1999, ch. 570, § 3, p. 3956.)

days has run. A summary judgment filed thereafter cannot be set aside.[9] Where the summary judgment remains unpaid after 20 days, the surety may not provide bail.

"The sponsor states that bail agents often are not aware that a defendant has absconded until very close to the end of the 180-day period. Agents may be hard pressed to file a motion to toll and extend the 180-day period within those 180 days. The provisions requiring the bail agent to give 10 days notice to the prosecutor prior to the hearing of any motions also impair the bail agent's ability to obtain exoneration of bail." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 476 (1999–2000 Reg. Sess.) as amended July 6, 1999, pp. 6–7, italics added.)

Thus, the Legislature moved the provision allowing a 30-day grace period for hearings from subdivision (c) to subdivision (i) of section 1305, in order to make it available to sureties moving to toll or extend the 180-day period. In the judicial decision prompting this change, the court had reasoned that former subdivision (c)(4) of section 1305 provided a grace period *only* for hearing motions to vacate forfeiture. (*County of Los Angeles v. National Automobile & Casualty Ins. Co.*, *supra*, 67 Cal.App.4th at p. 278.) When the Legislature responded to this ruling in 1999, it did not alter the provisions contemplating a motion filed within the 180-day period. Application of the timing provisions of section 1305(i) was expanded to include motions to toll or extend the 180-day period. It was not contracted to exclude motions to vacate forfeiture and exonerate the bond under section 1305(c)(3).

This legislative history confirms the *Lexington* court's interpretation of the statutory scheme. The evolution of the statute makes it plain that the provisions of section 1305(i) govern motions for relief under section 1305(c)(3). The statutory changes and committee reports discussed above show that from the time the Legislature first contemplated motions "filed in a timely manner within the 180-day period," it had motions for relief from forfeiture in mind. And if such motions could be made within any reasonable time after the 180-day period, as Lumbermens would have it, there would have been no reason for the Legislature to provide a 30-day grace period for hearings.

---

[9] This statement is incorrect. Relief is available from a summary judgment that is inconsistent with the consent given in the undertaking. (*County of Los Angeles v. American Bankers Ins. Co.* (1996) 44 Cal.App.4th 792, 795 [52 Cal.Rptr.2d 75]; see *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 663–664 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

Furthermore, as both the *Lexington* court and the 1999 Senate committee report noted, summary judgment is to be entered against the surety after the expiration of the 180-day period unless the forfeiture of bail has been set aside. (§ 1306, subd. (a); *Lexington, supra,* 158 Cal.App.4th at p. 375; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 476 (1999–2000 Reg. Sess.) as amended July 6, 1999, p. 7.) It follows from this requirement that the surety must seek relief from forfeiture before the 180-day period lapses.[10]

## C. *Conclusion*

■ Lumbermens and amicus curiae sureties advance a number of policy reasons why a motion for relief under section 1305(c)(3) should be permitted beyond the statutory period. These arguments would be better addressed to the Legislature. We note, in any event, that the existing statutory scheme has been designed to avoid undue hardship for bail sureties. A surety undertakes to guarantee the defendant's timely appearance in court. If the defendant fails to appear, the surety is contractually obligated to the government in the amount of its bond. (See *People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at pp. 657–658.) Section 1305 allows the surety 180 days, a generous period, to obtain relief by locating the defendant and bringing him or her to custody, or by showing the court that the defendant's absence is due to disability or out-of-state custody. The surety may obtain an extension of the 180-day period upon a timely showing of good cause. (§ 1305.4.)

■ The surety's contractual obligation on its bond is the same whether the defendant eventually returns to custody in the county where bail was granted or elsewhere. The statutory 180-day period is also the same, and the Legislature has reasonably required that when the defendant is returned to custody outside the county, it is incumbent on the surety to bring a motion for relief from forfeiture. The deadlines and procedures for seeking relief have been tailored to accommodate the interests of the surety, which appropriately bears the burden of compliance with the statutory requirements. (See *People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 152 [92 Cal.Rptr.3d 516].) Certainly, in this case Lumbermens had a more than adequate opportunity to obtain relief from forfeiture within the statutory period. The nonstatutory "reasonable time" it urges us to accept is inconsistent with a surety's contractual and statutory obligations.

---

[10] We disapprove the contrary holding of *People v. Ranger Ins. Co., supra,* 141 Cal.App.4th 867.

## DISPOSITION

We reverse the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.